ORRISON, Respondent v. CITY OF RAPID CITY, Appellant

(74 N.W.2d 489)

(File No. 9495. Opinion filed January 30, 1956)

**Hanley & Costello,** Rapid City, for Defendant and Appellant.

**John C. Farrar** and **H. F. Fellows,** Rapid City, for Plaintiff and Respondent.

RENTTO, J. The plaintiff, by her guardian, sued defendant city for damages sustained when she stepped on a piece of a broken glass soft drink bottle on the floor of the girls' dressing room at a public swimming pool operated by

the defendant city in one of its public parks. She was then about sixteen years old. Negligence is alleged as the basis of her claim. The city admitted its operation of the facility and plaintiff's injury therein, but denied the charge of negligence. It urges these additional defenses: (1) Governmental immunity; (2) Lack of notice of the condition causing the injury; (3) Plaintiff's contributory negligence; and (4) Assumption of risk. Defendant's motion to dismiss and motions for a directed verdict were denied. The jury found for plaintiff and awarded her $1,000. A new trial was denied. This appeal is from the judgment entered on the verdict, and from the denial of a new trial.

Throughout the trial counsel for the city contended that no liability exists for the reason that the activity involved is a governmental function. The rejection of this contention by the trial court is the basis for a group of the errors assigned. The difference of opinion which exists concerning this matter has been noted by this court. No useful purpose would be served by a further discussion. The view adopted by the trial court is the rule that prevails in this jurisdiction. Norberg v. Hagna, 46 S.D. 568, 195 N.W. 438, 439, 29 A.L.R. 841; Norberg v. City of Watertown, 53 S.D. 600, 221 N.W. 700; Glirbas v. City of Sioux Falls, 64 S.D. 45, 264 N.W. 196. See also Jensen v. Juul, 66 S.D. 1, 278 N.W. 6, 115 A.L.R. 1280. It is our view that in operating this swimming pool and its related facilities the defendant city was acting in a proprietary rather than a governmental capacity. The city offered to prove that its operation of the facilities involved resulted in a financial loss. This offer was properly rejected. The fact that a municipality incurs a deficit in the operation of the pool does not change it from a proprietary activity to a governmental function. Flesch v. City of Lancaster, 264 Wis. 234, 58 N.W.2d 710.

In connection with the pool, which is an outdoor facility, and adjacent thereto, the city maintains an office, a boys' dressing room and a girls' dressing room. It was first operated in the summer of 1951. During that year a coin-operated soft drink vending machine was stationed in the office. The pool opened for the summer of 1952 on June 10th, the day before plaintiff suffered her injury. At that time the main-

tenance of the soft drink vending machine in the office was discontinued because it created a congestion. Instead one was placed in the boy's dressing room and another in the girls' dressing room. These machines delivered the soft drink in glass bottles. The girls' dressing room is thirty feet by twenty feet in size with a concrete floor. There is a row of benches along the south wall and a row of benches down the middle. Along the north wall is a row of dressing stalls. It was estimated that the facilities would accommodate about one hundred fifty to two hundred girls. Those who used the pool for swimming paid their admission at the office and received a basket, with a key therefor, into which they put their clothes and personal effects while using the pool. These baskets were left on racks in the dressing room.

The pool was not used for public swimming in the mornings. In the afternoon of June 11, 1952 plaintiff was swimming in the pool. She was called to report at the office so she left the pool and went to the dressing room to get her shoes which were in her basket. After entering and taking a few steps into the room she stepped on a small piece of glass with her left foot. This caused a minor injury— not the one involved in this suit. So that she might sit down and examine her injury she started toward a bench which was a couple of steps away. Just as she was about to sit down or just as she was to get up from the bench, she placed her right foot on the broken bottom of a glass soft drink bottle. This piece of glass was under the bench. It inflicted a deep cut severing tendons in her foot. That afternoon the girls' dressing room was being used by some one hundred fifty to one hundred ninety girls. Most of them were youngsters. At the time plaintiff was injured there were quite a few girls in the dressing room. The floor was covered with water. Apparently it was permissible to drink soft drinks in the dressing room. The city contended that it provided containers for the empty bottles. The plaintiff and one of her witnesses said they did not see any. Empty bottles were left on the vending machine, on the benches, and on the floor. The vending machine was very busy that afternoon.

The city had two lady attendants and a cashier on duty in the office and at the girls' dressing room. The cashier spent most of her time at the office. The attendants also were at the office handing out keys and baskets. They divided their time about equally between the office and the girls' dressing room. From the office they could not see what was happening in the dressing room, but from time to time, as the work in the office permitted or when they were called, they would leave the office and go into the dressing room. Apparently there were times when the cashier and both attendants were at the office.

The girls' dressing room was cleaned each noon before it was opened to the public. On the day before plaintiff was hurt broken glass had been swept from the floor of the girls' dressing room. On the afternoon of plaintiff's injury it had been necessary to sweep broken glass from the floor of the girls' dressing room several times prior thereto. Witnesses for the city testified that the broken glass had been swept up just before plaintiff's injury, however, a witness for plaintiff said that she had been in the dressing room for about one-half hour before plaintiff was injured and didn't see anyone sweep the floor. On this same afternoon ' before plaintiff was injured two other girls stepped on glass in the girls' dressing room suffering only minor injuries. One of the attendants said that she knew that bottles were being broken in the girls' dressing room from time to time prior to plaintiff's injury. An assistant lifeguard, who cleaned the dressing room on Sunday, said that a broom and dust pan were kept in the office "because there was a chance for broken glass on the floor". This arrangement was made in the 1951 season. During that year. when the vending machine was kept in the office, it had been necessary to sweep up broken glass in the dressing room. The attendants had been instructed "to watch and see that there was no broken bottles in the dressing room". The attendants testified that whenever they knew or learned of broken glass on the floor they swept up every piece they could find but did not sweep the entire room.

The defendant city is not an insurer of the safety of the patrons using the dressing room. However, it

was the duty of the city to use reasonable care to maintain the floor in the girls' dressing room in a reasonably safe condition for the patrons using that room for the purposes for which that room is ordinarily used. Jensen v. Juul, supra. This duty includes the duty of reasonable and ordinary care against foreseeable dangers. McQuillin Municipal Corporations, 3rd Ed., Vol. 19, § 54.13. Caldwell v. Village of Island Park, 304 N.Y. 268, 107 N.E.2d 441; Smith v. City of Yankton, 23 S.D. 352, 121 N.W. 848; Braatz v. City of Fargo, 19 N.D. 538, 125 N.W. 1042, 27 L.R.A.,N.S., 1169; 65 C.J.S., Negligence, § 5(c) (2) (a). If the dangerous condition that caused plaintiff's injury was reasonably foreseeable the city would be negligent if it did not use reasonable care to provide against it. What degree of care is reasonable necessarily depends upon the attendant circumstances. Under the circumstances disclosed by the evidence these were matters for the jury to determine.

The city argues that it is not liable unless it had notice of the specific difficulty claimed to have caused plaintiff's injury. By this argument it contends that each time broken glass got on the floor of the dressing room, if the city didn't have actual knowledge, it could not be charged with constructive knowledge unless a sufficient period of time had elapsed to allow it to take remedial measures. "As a general rule, in order to render a municipal corporation liable under the common law for injuries resulting from a defective condition in street or sidewalk, which it has not itself created or authorized, it must have had knowledge or notice thereof a sufficient length of time before an injury to afford a reasonable opportunity to remedy the condition or to take other precaution to guard against injury." Williams v. Wessington Twp., 70 S.D. 75, 14 N.W.2d 493, 494. It is to be noted that the quoted rule contains the exception "which it has not itself created, or authorized". This is the general rule. McQuillin Municipal Corporations, 3rd Ed., Vol. 19, § 54.104. The exception concerns negligence that is sometimes called "original". The condition complained of, if foreseeable, comes within the exception, and is not a subsequently occurring defect. To adopt the city's contention would relieve it of all duty to protect against

foreseeable dangers. We think a municipality which extends to its citizens an invitation to use its swimming facilities owes them this duty. While the city did not cause the broken glass to be on the floor, its presence on the floor in view of the surrounding circumstances is a condition which the jury could properly say was reasonably foreseeable, and for which the city was liable. Smith v. City of Yankton, supra.

 Over defendant's exception, as its instruction number six the court stated the following:

"You are instructed, ladies and gentlemen of the jury, that to find that the defendant was negligent you must find that the defendant had actual or constructive notice of the existence of the condition which caused the injury.

"Actual notice is such notice as the words naturally imply; that defendant in fact knew of the existence of the condition which caused the injury.

"You are instructed that if the defendant as a reasonably prudent person knew or should have known that to maintain a Coca-Cola vending machine in the dressing room would in all probability cause the existence of the dangerous condition which actually caused the injury, and did maintain or permit the maintenance of such Coca-Cola vending machine in the dressing room, then you are entitled to find that the defendant had constructive notice."

The reference to actual notice should have been eliminated. However it is our view that this did not mislead the jury and was not prejudicial to the defendant. Allen v. McLain, 74 S.D. 646, 58 N.W.2d 232; Id., 75 S.D. 520, 69 N.W.2d 390. Defendant's principal exception was to the third paragraph on the ground that it made the city liable for forseeable dangers. This contention is answered in the views above expressed. While referring to it as constructive notice the third paragraph states a proper rule for determining foreseeability. 65 C.J.S., Negligence, 5(b). In the law of negligence one is charged with knowledge or notice of what a reasonably or ordinarily prudent person would have foreseen.

 Plaintiff's complaint alleged her cause of action thus:

"On June 11, 1952, in a public dressing room

> maintained in connection with and as a part of a public swimming pool established and operated for pecuniary charge by defendant, and as a proximate result of defendant's negligence, with full knowledge of such dangerous and unsafe condition in allowing broken glass to remain on the floor of said dressing room, plaintiff stepped on such glass and became permanently injured and suffered deformity and permanent partial loss of her right foot, suffered great pain of body and mind which will be permanent and incurred expenses for medical attention and hospitalization, all to her damage in the sum of $20,000.00."

In its exceptions to instruction number six the city urged that said instruction changed the nature of the cause of action. Apparently this claim is based on the allegation "with full knowledge of such dangerous and unsafe condition in allowing broken glass to remain on the floor of said dressing room". In 38 Am.Jur., Negligence, § 268 it is said: "The plaintiff may make an allegation as to the defendant's knowledge of the dangerous condition which caused the injury. This is simply one method of stating the duty which devolves upon the defendant to avoid injuring the plaintiff". In Bancrofts Code Pleading, Vol. 4, § 2038, the rule is stated thus: "Knowledge by the defendant of the conditions resulting in the injury, where necessary to show a duty on his part must be alleged, though generally knowledge is implied from an allegation of his negligence". "A general allegation of knowledge on the part of the defendant is sufficient to include constructive, as well as actual, knowledge." 65 C.J.S., Negligence, § 186(d) (2), It seems to us that the quoted language is an allegation of the foreseeability of the dangerous condition. 36 C.J.S., p. 1250.

This was the first time plaintiff had used the pool in 1952. She testified that after she cut her left foot she looked at the floor before walking to the bench and did not see any glass. That in walking to the bench after she cut her left foot, which was only a couple of steps, she was not watching where she walked. She was not excited after she cut her left foot but she was worried. It was a bright sunshiny day and the dressing room was pretty well lighted. The city argues that plaintiff's admitted conduct under the

circumstances constituted contributory negligence sufficient to bar recovery. Bearing on this feature is this additional evidence. The glass that she stepped on was under the bench and the floor was covered with water. She had been in the pool about an hour and came into the dressing room from the brilliant sunshine. One witness testified that when she came into the dressing room: "It looks awfully dark in there, but after you are in there a while you can make things out." This same witness, when asked on cross examination if the glass that plaintiff stepped on was in plain sight answered: "Well, I couldn't say it was in plain sight. When you came in from outdoors it's terribly hard to see it underneath the corner of the bench".

Plaintiff was in a place provided for those using the pool. She had a right to be there and was using it for the purposes for which it had been provided. Her use was in a manner that was proper and expected. There was an implied representation that the place was reasonably safe. Jensen v. Juul, supra. She was not bound, at her peril, to keep her eyes constantly on the floor. She had a right to believe that the floor was in a reasonably safe condition and to act with reasonable prudence upon that belief. Hermandson v. City of Canton, 60 S.D. 367, 244 N.W. 525. The city argues that she acquired knowledge of the dangerous condition when she stepped on the small piece of glass with her left foot and that such knowledge bars recovery. We are unable to agree. "It is not the knowledge of a defect on the part of the person injured that precludes his recovery but his want of the care a prudent man would exercise in view of the danger." McQuillin Municipal Corporations, 3rd Ed., Vol. 19, § 54.124, p. 465; Snee v. Clear Lake Telephone Co., 24 S.D. 361, 123 N.W. 729. See also West v. Hanley, 73 S.D. 540, 45 N.W.2d 455. Under these circumstances we believe the question of her contributory negligence was for the jury.

Closely associated with the claim of contributory negligence is the defense of voluntary assumption of risk. "Assumption of risk constitutes a defense when one enters on the known unsafe premises of another having no right to do so save that derived from the owner's consent, but does

not constitute a defense as to one to whom the owner is under a duty to maintain the premises in a safe condition where the owner's failure to do so has created a situation in which it is reasonably necessary to undergo a risk in order to protect a right." Seelbach, Inc., v. Mellman, 293 Ky. 790, 170 S.W.2d 18, 19; City of Madisonville v. Poole, Ky., 249 S.W.2d 133; Restatement of the Law, Torts, § 893.

In its instruction on damages the court told the jury, "The elements entering into the damages are as follows: Any pain and suffering she has suffered by reason of her injuries, and sum or sums as the jury may deem reasonable and proper which the plaintiff has incurred for medical and hospital bills". Defendant excepted to this on the grounds that it permitted the jury to award damages for future pain and suffering and also on the ground that it did not expressly take from the jury the question of damages for permanent injury. It seems clear to us that this language limits recovery to past pain and suffering, and that the court was not required to go to the length suggested by defendant. There is no evidence of permanent injury. In its instruction defining the issues the court embodied the allegations of plaintiff's complaint—including those alleging permanent injury. The trial court should present to the jury only those issues which are raised by the pleadings and which find support in the evidence. Allegations of which there is no proof should not be included. However defendant did not except to the inclusion of this allegation in the statement of the issues. From a review of the injuries plaintiff suffered and the expense she incurred by reason thereof, we are satisfied that the jury did not allow for permanent injuries or for future pain and suffering.

Defendant presented nine interrogatories for submission to the jury. All were refused. The authority for the submission of "interrogatories" is found in SDC 33.1330. Whether trial court should submit interrogatories to the jury is a matter which, under this statute, is within its judicial discretion. The court's action was not an abuse of its discretion. Yeager v. South Dakota Central Railway Co., 31 S.D. 304, 140 N.W. 690. Defendant complains of the

admission of evidence concerning other similar accidents occurring prior to plaintiff's injury. These occurred on the day of plaintiff's injury and the day before in the same place and under the same conditions. This testimony was properly admitted. Poppen v. City of Watertown, 74 S.D. 402, 53 N.W.2d 616. It was admissible to show that a dangerous condition resulted from maintaining the vending machine in the girls' dressing room and it also would be of probative value on the question of whether this condition was reasonably foreseeable. Evidence that the vending machine was removed from the girls' dressing room promptly after plaintiff's injury was admitted without objection.

 Defendant's requested instruction number one, which was refused, is as follows:

"You are instructed that the fact that the accident happened is not in itself any evidence that Defendant City was negligent in any particular. You will not, therefore, draw any inference of any negligence on the part of city solely because of the fact that the accident happened and that the Plaintiff stepped on some broken glass in the ladies' dressing room at the swimming pool and was injured in so doing."

While it is true that the mere happening of an accident or an occurrence of injury does not raise a presumption or authorize an inference of negligence on the part of defendant, it is also true that negligence may be inferred from circumstances surrounding the injury, if not from the fact of injury itself. 38 Am.Jur., Negligence, § 290; 65 C.J.S., Negligence, § 220(1). It seems to us that defendant's request goes beyond the mere fact of injury and seeks to prevent the jury from drawing any inference of negligence from circumstances surrounding the injury. This we think is an invasion of the province of the jury. Other instructions were requested and refused. We have reviewed all of them. Some of them requested matters substantially embodied in the instructions given. The others presented defensive theories which we have herein held were properly rejected. We are satisfied that the issues involved were fairly and properly submitted to the jury, and that the trial court committed no error prejudicial to the defendant.

The judgment and order appealed from are affirmed.
All the Judges concur.