Herbert LILLEMOEN, et al., Appellants,

v.

David P. GREGORICH, Respondent.

No. 47111.

Supreme Court of Minnesota.

July 15, 1977.

James R. Schwebel and Gregory P. Joseph, Minneapolis, for appellants.

Coulter, Nelson & Sullivan and Lyle R. Frevert, Minneapolis, for respondent.

Heard before KELLY, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal by plaintiffs, Herbert and Cyrilla Lillemoen, against defendant, David Gregorich, for injuries sustained by Mr. Lillemoen while a tenant in an apartment building owned by Gregorich. The case was tried before a jury in Anoka County District Court. At the close of plaintiffs' case, a verdict was directed in favor of

defendant. Plaintiffs appeal the denial of their motion for a new trial. We reverse.

The Lillemoens moved into their present apartment, where the injury occurred, on May 4, 1970. They have never had a written lease on the premises. Gregorich was not the owner at the time they moved in, but purchased the building in July 1972. The incident resulting in Mr. Lillemoen's injury occurred on January 15, 1974. At about 10 a. m. Mr. Lillemoen left the apartment to buy groceries. He went out by the front door, which opened onto a staircase leading to ground level. These stairs were for the sole use of the Lillemoens' apartment. On the day in question the steps were icy, due to water which had dripped from the roof and frozen on them. The edge of the building roof extended partially over the stairs, and there were no gutters on the roof at the time of the accident. Since then, gutters have been installed. A handrail extended the full length of the staircase on the right side; on the left side there was a rail from ground level up to the side of the building.

Mr. Lillemoen testified that he descended the stairs without slipping. He was wearing rubbers and used the handrail on the side away from the wall. He stated that he used the front stairs, despite their icy condition, because the back entrance used by all the apartments was also icy. Mrs. Lillemoen testified that the back, common entrance was also icy on the day in question, and further, that this entrance had no sidewalk connecting it with the road or driveway.

When Mr. Lillemoen returned a short time later, he was carrying a bag of groceries. Because he lacked two fingers on his right hand, he carried the bag in his right arm and held on to the left handrail as he ascended the stairs. Upon reaching the second or third step from the top, Mr. Lillemoen released the handrail to grasp the doorknob. He slipped on the ice and fell, breaking his hip.

There was considerable conflicting testimony over who cared for the steps leading to the Lillemoens' apartment. Mrs. Lille-

moen testified that the building caretakers had always shoveled the snow off the steps, but admitted that her husband occasionally shoveled the steps himself. Both plaintiffs admitted they salted the steps with their own salt to reduce the ice problem. Gregorich testified that he had always provided salt for use by his tenants on the walks and stairways. The ice causing Mr. Lillemoen's fall had been present the day before, according to Mrs. Lillemoen, and had worsened due to dripping water from the roof on the day of the accident. She knew of the condition of the steps, but did not warn her husband about it. Mr. Lillemoen admitted on cross-examination that he had no knowledge of the condition of the back entrance when he left for the store; he stated that he did not try it upon his return because he did not have the key to open it.

Gregorich testified that he knew of the absence of a gutter over the Lillemoens' stairway, and of the partial handrail on the left side. He admitted to generally realizing that water dripping off the roof onto the stairs could freeze and result in the ice problem. He denied that the building caretakers took any responsibility for shoveling the private stairways. He testified that putting up gutters over the Lillemoens' stairs helped the ice problem little, since the gutters themselves would fill with ice. Gregorich stated that he had never received complaints from the Lillemoens regarding the ice problem; Mr. Lillemoen's testimony corroborated Gregorich on this point.

The court summarized its interpretation of the facts by directing a verdict in defendant's favor in the following words:

"THE COURT: The Court is going to rule on this. I am granting the defendant's motion. I do not believe under the circumstances that the plaintiffs have shown the defendant had control over this area, even control in common with other people. That this was the entrance to this particular apartment. That the condition that was created was created by an act of God, or by natural causes or however you want to refer to it, wherein the snow which accumulates on the roofs

of buildings, runs off it, causes a problem that is general in the State of Minnesota. There is testimony that after the gutter was put on, it did not alleviate the situation, so a gutter would not have made any difference one way or the other, and not only that, I find that the plaintiff was negligent as a matter of law in failing to provide for his own safety, that he observed the condition of the stairway, he used it nevertheless and after one is bound to use or exercise reasonable care for his own safety, and the motion of the defendant is granted."

This statement appears to draw two legal conclusions: (1) Gregorich had no duty to maintain a safe condition on the Lillemoens' stairs, and (2) reasonable minds could not differ that Mr. Lillemoen was more negligent than Gregorich, thus barring his recovery even under the comparative negligence statute, Minn.St. 604.01. Either of these conclusions would warrant a directed verdict for Gregorich at the close of plaintiffs' case.

Plaintiffs contend that, in addition to liability at common law, Minn.St. 504.18, subd. 1, is applicable. That statute provides:

"In every lease or license of residential premises, whether in writing or parol, the lessor or licensor covenants:

(a) That the premises and all common areas are fit for the use intended by the parties.

(b) To keep the premises in reasonable repair during the term of the lease or license, except when the disrepair has been caused by the willful, malicious, or irresponsible conduct of the lessee or licensee or a person under his direction or control.

(c) To maintain the premises in compliance with the applicable health and safety laws of the state and of the local units of government where the premises are located during the term of the lease or license, except when violation of the health and safety laws has been caused by the willful, malicious, or irresponsible conduct of the lessee or licensee or a person under his direction or control.

"The parties to a lease or license of residential premises may not waive or modify the covenants imposed by this section."

This matter therefore presents the following legal issues:

(1) Did Gregorich owe a duty to the Lillemoens to keep their private stairs free of ice?

(2) Does the evidence show conclusively that Mr. Lillemoen was the major cause of his own injury?

■ 1. This case involves a dangerous condition of which both the landlord and tenant were aware. Accordingly, the duty of disclosure established in cases such as *Johnson v. O'Brien,* 258 Minn. 502, 105 N.W.2d 244 (1960), is not applicable. Because the stairway herein led only to the Lillemoens' apartment and no other, the "common area" cases are similarly inapposite. See, e. g., *Nubbe v. Hardy Continental Hotel System,* 225 Minn. 496, 31 N.W.2d 332 (1948). The relevant inquiry becomes who had control over the stairway as between Gregorich and the Lillemoens. *Rosmo v. Amherst Holding Co.,* 235 Minn. 320, 50 N.W.2d 698 (1951). The rule adopted in *Rosmo* is that of the First Restatement of Torts, § 360; this section is essentially unaltered in the Second Restatement:

"360. Parts of Land Retained in Lessor's Control Which Lessee is Entitled to Use

"A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the un-

reasonable risk involved therein and could have made the condition safe." [1] It has been held that the question of control over a stairway is one of fact. *West v. Hanley*, 73 S.D. 540, 45 N.W.2d 455 (1950); *Andrews v. McCutcheon*, 17 Wash.2d 340, 135 P.2d 459 (1943). The *Andrews* case states:

"The landlord may expressly or impliedly reserve control over the stairway in those cases where it is for the exclusive use of a single tenant and his invitees, or he may expressly or impliedly include a stairway in his leases to the several tenants and make it a part of the leased premises. As to whether or not this has been done, in either case, is a question of fact. When the landlord either expressly or impliedly reserves control over the stairway, whether there be one tenant or several, the tenant or tenants will be protected in his or their right to the use of the stairway, and the landlord has the legal duty to keep and maintain the stairway in a reasonably good and safe condition for use by such tenants and their invitees." 17 Wash.2d 345, 135 P.2d 461.

Rule 50.01, Rules of Civil Procedure, provides that a motion for directed verdict on a factual question shall not be granted if the evidence is sufficient to sustain a verdict for the opponent.

█ In this case the issue of control over the stairway was disputed. It appeared that at times Mr. Lillemoen shoveled the steps or put salt on them, yet both the Lillemoens testified that the caretakers shoveled the walks and the steps. Gregorich stated that he always had salt available for the tenants to use, but Mr. Lillemoen insisted he had to buy and use his own. Though the apartment had a back door which opened onto a hall in common with the other apartments, Gregorich admitted he occasionally used the private stairway to collect rent. In sum, it is clear that while the stairs were an appurtenance to the Lillemoens' leasehold for their private use, it is uncertain who exercised control over the steps as far as their maintenance in a safe condition is concerned. If Gregorich had assumed this responsibility, he had a duty to ensure that the steps were kept free of dangerous ice, from whatever cause. If the Lillemoens had assumed the responsibility, Gregorich cannot be charged with such a duty. Restatement, Torts (2d) § 360.

The record does not show that a jury verdict for the Lillemoens would have been unwarranted. Therefore, the control issue should have been submitted to the jury for its determination, and it was error to hold as a matter of law that no control by Gregorich had been shown.

2. Under the comparative negligence statute, Minn.St. 604.01, Mr. Lillemoen could not recover against Gregorich if he was shown to be more negligent than Gregorich. The district court held "as a matter of law" that Mr. Lillemoen had been negligent, but it did not explicitly state that he had been more negligent than Gregorich.

█ The evidence clearly supports the conclusion that Mr. Lillemoen was negligent in some degree. First, he knew that the steps were icy, and yet used them to exit and enter the apartment without taking any remedial measures. Second, another entrance was available, which Mr. Lillemoen did not personally investigate either upon leaving or returning. See, *Muckler v. Buchl*, 276 Minn. 490, 150 N.W.2d 689 (1967); *Donald v. Moses*, 254 Minn. 186, 94 N.W.2d 255 (1959). Gregorich, on the other hand, could be held negligent in not providing proper roof cover or drainage over the stairs, or in not instructing or supervising his caretakers sufficiently to ensure that the ice problem was alleviated by some method. Certainly Lillemoen could not have altered the design of the building, which was the basic cause of the melting snow dripping in approximately the center of the steps. There is sufficient evidence of negligence on both sides (assuming Gregorich is found to have the requisite control

---

1. There is no question that the Lillemoens were entitled to the use of the stairway as an appurtenance to the leased premises.

over the stairway) to sustain a jury verdict for either party. In such circumstances, the jury should be permitted to apportion the negligence. *Winge v. Minnesota Transfer Railway Co.*, 294 Minn. 399, 201 N.W.2d 259 (1972); *Heggestad v. Dubke*, 304 Minn. 129, 229 `N.W.2d 34 (1975). It was therefore error to direct a verdict for Gregorich on this basis.

■ Plaintiffs claim that the trial court erred in excluding expert testimony concerning industry custom, practice, and safety codes in effect at the time defendant's building was constructed. We find no abuse of discretion by the trial court on this issue, based upon the facts as presented.

The case is reversed and remanded for a jury trial.